# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:12-cv-00058-MR
### [Criminal Case No. 1:08-cr-00127-MR-1]

| | | |
|---|---|---|
| STEVEN GORDON CASPER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1]; Petitioner's Motion for Summary Judgment [Doc. 4]; and the Government's Response to Petitioner's Motion to Vacate [Doc. 13].

## I.    PROCEDURAL BACKGROUND

Petitioner Gordon Casper was indicted by the Grand Jury for the Western District of North Carolina on December 3, 2008, and charged with two counts of being a felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g).    [Criminal Case No. 1:08-cr-00127-MR, Doc. 1: Indictment].    On February 6, 2009, the parties entered into a written plea agreement.    [Id., Doc. 8: Plea Agreement].    Thereafter, on February 13,

2009, pursuant to that agreement Petitioner entered a guilty plea to Count One before U.S. Magistrate Judge Howell. [Id., Doc. 10: Acceptance and Entry of Guilty Plea]. On January 21, 2010, this Court sentenced Petitioner to 180 months' imprisonment on Count One, to be followed by three years' supervised release. [Id., Doc. 21: Judgment]. At sentencing, Petitioner was designated as an armed career criminal, and he was, therefore, subject to a mandatory minimum sentence of 180 months under 18 U.S.C. § 924(e). See [Id., Doc. 22: Statement of Reasons]. Petitioner filed an appeal, which appeal was dismissed by the Fourth Circuit on November 9, 2010. United States v. Casper, No. 10-4116 (4th Cir. Nov. 9, 2010). The Supreme Court subsequently denied Petitioner's petition for writ of certiorari on April 4, 2011. Casper v. United States, 131 S. Ct. 1837 (2011).

On March 22, 2012, Petitioner filed the pending motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, followed on April 4, 2012, by a motion to amend. [Docs. 1; 2]. Pursuant to an Order entered by this Court on May 23, 2012, the Court granted Petitioner's motion to amend and directed the Government to respond to Petitioner's claims. [Doc. 3]. On September 14, 2012, after receiving several extensions of time, the Government filed its Response to the motion to vacate. [Doc. 13].

## II.    FACTUAL BACKGROUND

### A.    Offense Conduct

#### 1.    April 13, 2008 -- Sig Sauer .357 caliber handgun

The charges against Petitioner arose from a robbery at the Ridgeview Presbyterian Church in Bakersville, North Carolina, on April 13, 2008, during which three masked men, brandishing handguns, entered the church during the morning worship service and robbed the parishioners by taking money, cell phones, and keys.  [Criminal Case No. 1:08-cr-00127-MR, Doc. 11 at ¶ 7: PSR].  During the course of the robbery, one of the robbers accidentally squeezed the trigger of his handgun, firing a round of ammunition into the floor of the church near a young girl.  [Id.].  One parishioner kept his cell phone and called 911.  [Id.].  Later, that day, deputies of the Mitchell County Sheriff's Department arrested the three suspects, Josiah Deyton, Andrew Deyton, and Jonathon Koniak.  [Id. at ¶ 8].  Incident to arrest, officers searched the suspects' vehicle and found two handguns, one of which was identified as a Sig Sauer .357 caliber pistol, serial number SA4110639.  [Id.].  Based on subsequent analysis of the shell casing recovered from the church floor, the Sig Sauer .357 caliber

pistol was determined to be the same weapon that was fired inside the church during the robbery.  [Id.].

After his arrest, Josiah Deyton admitted to investigators that he had participated in the armed robbery of the church; that he had been at PC Solutions in Spruce Pine, North Carolina, on the morning of the robbery; that PC Solutions was owned by Petitioner; and that Deyton had taken Petitioner's .357 caliber handgun from PC Solutions without Petitioner's knowledge.  [Id. at ¶ 9].  Thereafter, Special Agent C.E. Vines of the North Carolina State Bureau of Investigation ("SBI") contacted Petitioner by telephone and asked Petitioner if he knew Josiah Deyton and whether Petitioner owned a .357 handgun.  Petitioner responded that he knew Joshua Deyton and that he (Petitioner) owned a .357 handgun, which he kept at his business.  [Id. at ¶ 10].  Agent Vines then informed Petitioner that the gun had possibly been stolen and used in the commission of an armed robbery.  [Id.].  Petitioner responded that he would check his business and verify whether the gun belonged to him.  [Id.].  Later that day, Petitioner contacted Agent Vines and verified that the .357 handgun was a gun that belonged to Petitioner.  [Id.].  The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") subsequently determined that the .357 caliber handgun, serial number SA4110639, used during the April 13, 2008,

church robbery and owned by Petitioner, had been manufactured in Switzerland and that Petitioner had purchased the handgun from an individual gun owner in North Carolina in May 2006.  [Id. at ¶ 11].

### 2. July 7, 2008 -- Glock Model 19, 9mm semi-automatic pistol

On July 7, 2008, the Spruce Pine Police Department ("SPPD") was dispatched to Petitioner's business, PC Solutions, 16 Fairway Lane, Spruce Pine, North Carolina, to investigate a breaking and entering/larceny that had occurred on July 6, 2008.  [Id. at ¶ 12].  While processing the crime scene, officers observed pictures of Petitioner on a hallway door showing several poses of Petitioner holding a black semi-automatic handgun.  [Id.]. Officers also observed a marijuana pipe located behind the door and a semi-automatic handgun/holster attached to the underside of a desk.  [Id.]. During this time, Petitioner asked one of the officers when his .357 caliber handgun would be returned to him.  [Id.].  After processing the scene at PC Solutions, SPPD Detective Stacy Hughes ran a computerized criminal records check from the State of Florida and learned that Petitioner had at least one prior felony conviction.  [Id. at ¶ 13].  The records check also showed that Petitioner had Florida convictions for dealing in stolen property, shooting at/within a building, arson, aggravated assault, and burglary.  [Id.].

The next day, July 8, 2008, Detective Hughes applied for, received, and executed a state search warrant at PC Solutions. [Id. at ¶ 14]. During the execution of the search warrant, officers found and seized a large variety of ammunition, a Glock Model 19, 9mm semi-automatic pistol, serial number GGC381, a marijuana pipe with residue, metal tubes which field tested positively for cocaine, and two 15mg tablets of oxycodone. [Id.]. Petitioner was then arrested and charged with possession of a firearm by a felon and possession of marijuana and cocaine, which charges were subsequently dismissed by the State of North Carolina in favor of federal prosecution. [Id.]. ATF later determined that the Glock Model 19, 9mm semi-automatic pistol, had been manufactured in Austria, that Petitioner had traded a Sig Sauer P220 handgun for the 9mm semi-automatic pistol in 2005 or 2006, and that the transaction had occurred at Petitioner's place of business, PC Solutions. [Id. at ¶ 15]. Finally, on November 18, 2008, ATF contacted the Florida Office of Executive Clemency concerning a pardon or relief of disability for Petitioner concerning his prior Florida convictions. [Id. at ¶ 16]. A search of the records confirmed that Petitioner had not received a pardon or clemency from the Governor of Florida. [Id.]. Thereafter, on December 3, 2008, Petitioner was indicted by the Grand Jury for the Western District of North Carolina and charged with two counts of being a

felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g).  [Id., Doc. 1].

### B.    Guilty Plea

On February 6, 2009, Petitioner entered into a plea agreement with the Government, agreeing to plead guilty to one felon-in-possession count in exchange for which the Government agreed to dismiss the remaining count against Petitioner.  [Id., Doc. 8: Plea Agreement].  Pertinent to Petitioner's claims herein, the agreement provided that in exchange for "the concessions made by the United States," Petitioner waived his "rights to contest the conviction and/or the sentence except for (1) claims of ineffective assistance of counsel; [or] (2) prosecutorial misconduct."  [Id. at ¶ 19].

A week after the parties filed the plea agreement, this Court, Magistrate Judge Dennis L. Howell, presiding, conducted Petitioner's plea colloquy pursuant to Federal Rule of Criminal Procedure 11.  See [Id., Doc. 35 at 1-25: Transcript of Rule 11 Hearing].  During the colloquy, Judge Howell recited the charge and the elements of the offense to which Petitioner was pleading guilty and the mandatory minimum and maximum penalty applicable to the charge, and Petitioner acknowledged that he

understood the charge against him and the maximum penalties he faced. [Id. at 14-16]. Petitioner also acknowledged that he understood that the applicable Sentencing Guidelines range of imprisonment would not be calculated until after the presentence report ("PSR") had been completed by the probation office and that he would be bound by his plea, even if the sentence was more severe than he expected. [Id. at 17-19].

Petitioner then affirmed that he was, in fact, guilty of the charge to which he was pleading guilty. [Id. at 21]. Government counsel recited the terms of the plea agreement, and Petitioner affirmed his understanding of, and agreement with, those terms. [Id. at 22]. Specifically, Government counsel explained that "in paragraph 19, the defendant gives up his right to appeal or otherwise challenge his sentence or his conviction except upon two grounds: ineffective assistance by his counsel or prosecutorial misconduct by the government." [Id.].

Judge Howell then questioned Petitioner as to the waiver of his right to appeal, and Petitioner affirmed that he understood that he was waiving his right to appeal his conviction and/or sentence "unless it [was] on the grounds of one, prosecutorial misconduct, or two, ineffective assistance of counsel." [Id. at 23]. Petitioner indicated that he was "knowingly and willingly accept[ing] these limitations on [his] right to appeal and to file

postconviction proceedings," id.; that his plea of guilty was voluntary and not the result of coercion, threats, or promises other than those contained in the written plea agreement, id. at 21; and that he was entirely satisfied with the services of his attorney, id. at 23-24. At the conclusion of the hearing, Judge Howell found that Petitioner's plea was knowingly and voluntarily made and accepted Petitioner's plea of guilty. [Id. at 24-25]. At the conclusion of the colloquy, Petitioner signed a Rule 11 Inquiry and Order of Acceptance of Plea memorializing the questions asked by the Court, as well as Petitioner's answers. [Id., Doc. 10: Acceptance and Entry of Guilty Plea].

### C. Sentencing

In the PSR, the probation officer began with a base offense level of 14, consistent with U.S.S.G. § 2K2.1(a)(6). [Id., Doc. No. 11 at ¶ 22]. The probation officer, however, then recommended an enhancement to level 33, pursuant to the Armed Career Criminal enhancement provided by U.S.S.G. § 4B1.4(b)(3)(B). [Id. at ¶ 28]. A three-level reduction for acceptance of responsibility yielded a total offense level of 30. [Id. at ¶ 30]. Based on an offense level of 30 and a criminal history category of IV – pursuant to U.S.S.G. § 4B1.4 (c)(3) – the probation officer initially noted an applicable sentencing guidelines range of between 135 and 168 months'

imprisonment.  [Id. at ¶ 83].  Because the statutory mandatory minimum sentence for Petitioner's violation of 18 U.S.C. § 922(g) was 180 months, pursuant to § 924(e), the Probation Officer ultimately recommended an applicable sentencing guidelines range of 180 months' imprisonment.  [Id.]. Petitioner objected to the Armed Career Criminal enhancement, arguing that his prior convictions should not be counted because of their age, and because his three burglary convictions should be grouped.  [Id., Doc. 12 at 2].

On January 21, 2010, this Court conducted Petitioner's sentencing hearing.  [Id., Doc. 36: Transcript of Sentencing Hearing].  During the hearing, Petitioner affirmed that he understood the nature of the offense to which he was pleading guilty, as well as the possible penalties he faced, and stated that he was satisfied with counsel and was pleading guilty freely and voluntarily.  [Id. at 3-5].  The parties then stipulated to a factual basis to support Petitioner's guilty plea, and the Court accepted Petitioner's plea. [Id. at 5-6].  After Petitioner argued that three of the seven Armed Career Criminal predicate convictions should have been grouped, this Court overruled Petitioner's objection and ruled that counting each separately was appropriate.  Moreover, the Court appeared to accept the probation officer's contention in the PSR that Petitioner would still have four Armed

Career Criminal predicate convictions even if the three burglary convictions had been grouped.  [Id., Doc. 36 at 11-12; Doc. No. 13 at 32].  In imposing Petitioner's sentence, this Court noted the applicable advisory guideline range [Id., Doc. 36 at 12], recognized the statutory mandatory minimum [Id. at 36-37], and addressed Petitioner's arguments regarding the age of his prior convictions, his medical and psychological issues, and the specific facts of Petitioner's unlawful possession of a firearm conviction [Id. at 36].  The Court then sentenced Petitioner to 180 months' imprisonment, the congressional mandated mandatory minimum.[1]  [Id. at 36-37].  The Court entered its written judgment on February 9, 2010.  [Id., Doc. 21].

---

[1] In sentencing Petitioner to the mandatory minimum sentence of 180 months, the Court stated as follows:

> Ordinarily, prior to pronouncing sentence, I state on the record how I apply the statutory sentencing factors under Section 3553(a) because the statute says that I am supposed to employ these factors in fashioning a sentence, and the factors are, that I'm supposed to take into account, the seriousness of the offense and to promote respect for the law, a sentence that affords a deterrence to criminal conduct, a sentence that provides just punishment, a sentence that protects the public from further crimes of the defendant, a sentence that avoids unwarranted sentencing disparities with others who are similarly charged, but in this case, under 28 [U.S.C. §] 924(e), as [counsel for the Government] points out, the language of the statute is mandatory.  My discretion is completely taken away from me as to whether or not I can impose a sentence less than 180 months.
>
> Under the circumstances of this case, particularly the fact that the predicate acts that we are talking about in this case

**D.    Appeal**

Petitioner filed a timely notice of appeal on January 26, 2010.  [Id.,
Doc. 17: Notice of Appeal].  On appeal, Petitioner challenged the validity of
the indictment, the validity of his waiver of appeal, and the reasonableness
of his sentence.  The Government moved to enforce Petitioner's appellate
waiver and, consequently, to dismiss Petitioner's appeal because all of his
appellate claims were within the scope of his appellate waiver.  In his
response to the Government's motion to dismiss, Petitioner argued that his
case fell within an exception to the waiver.  On November 9, 2010, the

---

are ones that were prior to the defendant's medical treatment
for psychological issues, and that once he obtained
treatment, those problems ceased; the fact that all the
predicate acts are more than 15 years old, and but for the
specific exception for armed career criminal statute to the
15-year rule we would be looking at a charge with a total
offense level of 11 and a criminal history category of I.
That's Zone C.  We're talking about something that the
defendant would probably be looking at a period of
incarceration of less than a year.  On top of that, we have a
situation here where the present crime, the one that is
involved in this charge, was committed, really, based upon
what may even have been a reasonable misapprehension of
the effect of the restoration of his citizenship rights on the
part of the defendant.  With all of those factors together, I
have to say I cannot reconcile 924(e) with the factors in
Section 3553(a).  They just -- they don't match in this case.
But, yet, the statute makes clear to me that it's [section]
924(e) that prevails.  It's the one that's mandatory.  I will
make a finding on the record that the sentence that I am
required to impose in this case does not fulfill the factors of
3553(a), and, in fact, contravenes the purposes of
sentencing as expressed in 3553(a).

[Doc. 36 at 36-37].

Fourth Circuit Court of Appeals granted the Government's motion to dismiss. [Criminal Case No. 1:08-cr-00127, Doc. 37: Order; Doc. 38: Mandate].

### E.    Motion to Vacate

Petitioner placed the instant motion to vacate in the prison mailing system on March 16, 2012, and it was stamp-filed in this Court on March 22, 2012. [Doc. 1]. On May 23, 2012, Petitioner filed the pending motion for summary judgment. On September 14, 2012, the Government filed its Response. [Doc. 13]. On February 25, 2013, this Court granted a motion to withdraw as counsel by the Federal Defenders of Western North Carolina, following a review by the Federal Defenders as to whether Petitioner may be entitled to relief under United States v. Simmons, 649 F.3d 237 (4th Cir. 2011).[2] [Doc. 22].

In his motion to vacate, Petitioner alleges that his plea of guilty was unknowing and involuntary based on ineffective assistance of counsel.

---

[2] In Simmons, the Fourth Circuit held that, in order for a prior felony conviction to serve as a predicate offense [for either a crime of violence or a controlled substance offense], the individual defendant must have been convicted of an offense for which that defendant could be sentenced to a term exceeding one year. Simmons, 649 F.3d at 243 (emphasis added). In reaching this holding, the Simmons Court expressly overruled United States v. Harp, 406 F.3d 242 (4th Cir. 2005), which had held that in determining "whether a conviction is for a crime punishable by a prison term exceeding one year [under North Carolina law] we consider the maximum aggravated sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." Id. (quoting Harp, 406 F.3d at 246) (emphasis omitted). The Fourth Circuit has held that Simmons is retroactive to cases on collateral review. See Miller v. United States, 735 F.3d 141, 146 (4th Cir. 2013).

Specifically, Petitioner first alleges that counsel (1) misadvised Petitioner that the Court had the discretion to depart downward from a mandatory minimum sentence and (2) misled Petitioner into believing that he would receive consecutive sentences for the two Section 922(g)(1) offenses if he proceeded to trial and was found guilty of both offenses. [Doc. 1 at 12]. Petitioner also contends in the motion to vacate that, under the Fourth Circuit's *en banc* opinion in <u>United States v. Simmons</u>, he was incorrectly designated as an armed career criminal.

In response to Petitioner's motion to vacate, the Government has submitted the affidavit of Petitioner's trial counsel Jack W. Stewart. In his affidavit, Mr. Stewart states that, during the course of his representation of Petitioner, he had multiple conversations with Petitioner about the possible sentence he could receive based on whether he chose to plead guilty or to go to trial. [Doc. 15-1 at ¶ 6: Stewart Aff.]. Mr. Stewart states that he explained to Petitioner, "on more than one occasion, that the Plea Agreement subjected the [petitioner] to a minimum mandatory sentence of no less than fifteen (15) years and that the [petitioner] should not expect a sentence below that range." <u>Id.</u> at ¶ 7]. Mr. Stewart notes that while he repeated this advice "ad nauseum" to his client, Petitioner "unrealistically ignore[d]" that advice and "refuse[d] to accept the fact that any enhanced

sentence should be applied to his case," becoming argumentative and expressing hope that this Court would enter a more lenient sentence. [Id. at ¶¶ 7-8]. Mr. Stewart states that, in response to Petitioner's insistence that he would not receive the 15-year sentence, Mr. Stewart explained that, while the sentence ultimately rested with this Court, "the Presiding Judge could be expected to enter a sentence in accordance with the statutory guidelines." [Id. at ¶ 9]. Mr. Stewart states further that "at no time did [he] advise the [petitioner] that the Court's discretion included entering a sentence that was below the statutory minimum sentence calculated in this case." [Id. at ¶ 10]. Mr. Stewart also states that he "never misled the Petitioner into believing that any prospective sentence(s) would be entered consecutively." [Id. at ¶ 11].

## III. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). The rule goes on to provide procedures for responding to a motion for summary judgment:

> c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56).

## IV.   DISCUSSION

### A.   Petitioner's Claim of Ineffective Assistance of Counsel Related to Petitioner's Guilty Plea

In Ground One, Petitioner alleges that counsel (1) misadvised Petitioner that the Court had the discretion to depart downward from a mandatory minimum sentence and (2) misled Petitioner into believing that he would receive consecutive sentences for the two Section 922(g)(1) offenses if he proceeded to trial and was found guilty of both offenses. [Doc. 1 at 12]. Specifically, Petitioner contends that counsel told both

"Petitioner and Petitioner's father that the Court had the discretion to sentence Petitioner below the statutory minimum sentence for the offense, but he also stated that he could not guarantee that the Court would use its discretion to depart below the statutory minimum sentence." [Id. at 15]. Petitioner further states that he entered a guilty plea to Count One "[b]ased in part on this advice . . . believing that the Court had the discretion to sentence him below the statutory minimum sentence of 15 years." [Id.]. Petitioner also asserts, however, that he "was well aware that the Court did not have to sentence him below . . . 15 years" but "thought the Court would use its discretion to sentence him below 15 years" because of "the age of the prior convictions," the prior convictions had "occurred on the same date but had occurred at different locations," and he had been diagnosed and treated for ADHD after his prior criminal conduct and convictions. [Id. at 15-16]. Petitioner contends that, because of counsel's alleged poor advice regarding Petitioner's guilty plea, Petitioner's guilty plea was therefore not made knowingly and intelligently.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient

performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Finally, to demonstrate prejudice in the context of a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In evaluating such a claim,

statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22.

As noted, in response to Petitioner's ineffective assistance of counsel claim, the Government has submitted the affidavit of Petitioner's trial counsel. Mr. Stewart attests in his affidavit he did not advise Petitioner that this Court had the discretion to sentence Petitioner below the fifteen-year mandatory minimum term of imprisonment applicable to armed career criminals, nor did Mr. Stewart advise Petitioner that he would receive consecutive sentences if he went to trial. Mr. Stewart states that he repeatedly advised Petitioner that he was subject to the fifteen-year mandatory minimum and that the Court would impose that sentence. Furthermore, the record makes clear that Petitioner was advised during the plea colloquy that he would receive a minimum term of fifteen years in prison if he was determined to be an armed career criminal, and Petitioner

acknowledged under oath that he understood that he would be subject to that penalty if he was determined to be an armed career criminal. Here, Petitioner has simply not shown that his trial counsel rendered ineffective assistance of counsel in advising Petitioner whether to plead guilty.

The Court further notes that Petitioner also asserts in his motion that, had he gone to trial, he would have been subject to an applicable guidelines range of imprisonment of between 188 and 235 months. Because the bottom of this range is above the sentence of 180 months Petitioner actually received after pleading guilty, Petitioner has also not shown that, had he gone to trial, there is a reasonable probability that he would have received a lower sentence. Having shown neither deficient performance nor prejudice, Petitioner's ineffective assistance of counsel claim fails.[3]

### B. Petitioner's Claim Regarding His Designation as an Armed Career Criminal

Petitioner also contends that, under <u>Simmons</u>, he was incorrectly designated as an armed career criminal. The Fourth Circuit has made clear that a waiver of a defendant's right to challenge his conviction or his sentence during post-conviction proceedings is enforceable as long as the

---

[3] It follows that Petitioner has not shown that his guilty plea was unknowingly and unintelligently entered into based on the alleged incorrect advice from counsel as to the sentence that Petitioner would likely receive if he pled guilty.

defendant waives this right knowingly and voluntarily. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005) ("[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary."). Here, the Fourth Circuit dismissed Petitioner's appeal based on the Government's contention that Petitioner's guilty plea and attendant waivers were knowingly and voluntarily entered. Therefore, in entering into the written plea agreement, Petitioner waived the right to bring the current claim under Simmons.

Even if Petitioner's Simmons claim were not waived, it would fail on the merits. Petitioner argues that he was erroneously designated as an armed career criminal because he was not sentenced to a term of more than one year in prison for any of his prior offenses. Petitioner's reliance on Simmons is misplaced. Simmons addresses the issue of how to ascertain the maximum sentence to which a specific defendant can be subjected under North Carolina's structured sentencing law. Petitioner's convictions, however, were sustained in Florida, and thus, the reasoning of Simmons is inapplicable. In any event, as noted by the Fourth Circuit in United States v. Pulliam, "Simmons does not compel [the court] to look to the actual sentence imposed on a defendant," but rather requires that the court "focus on the maximum sentence that the defendant . . . could have

received." United States v. Pulliam, 474 F. App'x 134, 135 (4th Cir. 2012) (unpublished). Petitioner does not assert that he could not have received a sentence of more than one year for his prior convictions for shooting at a building, burglary (three convictions), arson, or battery of a law enforcement officer. Indeed, as noted by the probation officer in the PSR, Petitioner was subject to terms of imprisonment of not more than five years for his burglary offenses, not more than five years for his battery conviction, and not more than fifteen years for his arson and shooting convictions. [Doc. 13 at 10; 12-15]. For these reasons, Petitioner's Simmons claim would fail, even if not waived.[4]

## V. CONCLUSION

For the reasons stated herein, the Court will deny Petitioner's motion for summary judgment and dismiss the petition.

Finally, the Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. §

---

[4] While the Court is dismissing Petitioner's motion to vacate in part due to his waiver of appellate rights, the Court notes that such waiver would not preclude a post-conviction motion based on actual innocence. The Court further notes that it appears that Petitioner's state convictions are so old that a petition to vacate such convictions in the Florida courts may well be effective. There is nothing in the record to indicate that such relief has been pursued in this matter to date. Should Petitioner's state convictions be subsequently vacated, however, the Petitioner would not be precluded from filing a second motion to vacate pursuant to 28 U.S.C. § 2255 on the grounds of such vacatur. See United States v. Hairston, 754 F.3d 258, 262 (4th Cir. 2014) (holding that numerically second § 2255 motion was not second or successive pursuant to § 2255(h) when based upon subsequent vacatur of state convictions which contributed to calculation of defendant's federal sentence).

2253(c)(2); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his Motion to Vacate states a debatable claim of the denial of a constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000). As a result, the Court declines to issue a certificate of appealability. <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion for Summary Judgment [Doc. 4] is **DENIED**, and Petitioner's § 2255 Motion to Vacate [Doc. 1] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: September 10, 2014

Martin Reidinger
United States District Judge